May it please the Court, Robin Urbanski, California Deputy Attorney General, on behalf of Appellant Warden Lopez, I'm going to attempt to reserve three minutes of my time for rebuttal. There is no controlling precedent from the United States Supreme Court holding that the Due Process Clause requires that a criminal defendant be notified prior to trial of theories of guilt that may emerge during the course of a trial. The controlling precedent dictates that a criminal defendant has to be notified of the charges against him so that he can defend against them. Mr. Smith was afforded that notice in this case. It was the information, the charging document, charging him with first-degree murder. That is all the United States Constitution and the Supreme Court precedent interpreting it requires. The District Court, at least in the first time through the California Court of Appeal, seemed to conclude that although appropriate notice was initially given, because every murder defendant in California knows that an aiding and abetting theory is embedded in the information or indictment was given, that somehow it was withdrawn. Can you address that issue? Yes, Your Honor. The District Court found it unreasonable, essentially, that the State Court did not consider certain rulings that the trial court made subsequent to the preliminary hearing. And I think we need to take a step back to what occurred at the preliminary hearing. At the preliminary hearing, an officer testified to the statement of a jail informant who stated that Smith told him he wanted to get rid of his wife, he staged his house to make it look like a burglary scene, he removed property from the home, jewelry from the home, he left a window open and he left an alarm off that day. This is Morago or Morango? Right. Correct, Your Honor. So through this informant, the officer who testified to the informant's statement, a theory of aiding and abetting had absolutely been presented. I want to make it easier for you in terms of addressing this. Let's assume that the defendant was on notice, both as a legal matter from the indictment and from the way the preliminary hearing went, that an aiding and abetting theory was possible in his case. Yes. The way I read the District Court, the magistrate judge's report, which a district judge adopted, was that, sure, but once the judge made some rulings, he was entitled to believe that theory was no longer on the table. I think we understand the background. Can you address the rulings and tell us why you don't think that did what the district judge concluded? Absolutely, Your Honor. The District Court's conclusions in that regard are entirely unsupported by the record. The trial court in this case never prohibited the parties from calling the informant or discussing an aiding and abetting theory during the course of a trial. What the trial court ruled at the outset was that the parties could not mention the informant in opening statements only. The reason why was because there was a fear that the informant might not testify at the trial. There was a hanging Fifth Amendment privilege issue that the informant might have asserted, which nobody could have known at the point that the trial court made that ruling. Additionally, the prosecutor said that he would not call the informant in his case in chief only. If Mr. Smith decided to testify, the prosecutor might reconsider that decision. Let's fast forward to the end of the evidence. The prosecutor has now decided not to call the informant. Correct. Is that somehow an indication to Mr. Smith that there's not going to be an aiding and abetting theory in this case? No, Your Honor, because his own defense very much suggested an aiding and abetting theory in and of itself. If your defense is that it is physically impossible for you to commit a crime, and yet there's substantial evidence that you possess implements from staging the crime scene and property stolen from the crime scene in the trunk of your car when you were arrested, then you are unnoticed that the prosecutor may very well respond to that theory with a theory of its own that even if the defendant didn't kill the victim with his own hands, he participated in the staging, the planning, and the concealing of the crime. Therefore, he is liable as an aider and abetter. So a criminal defendant with that particular line of defense could not possibly be taken by surprise or by ambush by that theory. Isn't that somewhat different than what the Court of Appeal concluded in this case? I thought what the Court of Appeal said was looking at this under a Griffin analysis, there wasn't sufficient evidence to convict him of aiding and abetting, but we don't think there's a reasonable probability that's what the jury did. Correct, Your Honor, and I think that is a separate issue. Whether there's sufficiency of the evidence is one thing for a particular theory to go to a jury. Whether the defense is on notice at the time that he announces ready to proceed to trial is a completely different situation. And if the defense knows that this is his theory of defense that he is going to present to the jury, he's on notice that the prosecutor just might respond to that with, okay. I don't understand that. Basically, you're saying, look, let's assume for the sake of argument the defense attorney was fooled, and so he puts on this defense. How is that, putting it on his own defense, put him on notice that the state may respond with an aiding and abetting theory that hasn't been interjected in the case? It was the particular defense that was put forth in this case. I mean, you wouldn't put on that defense if you thought the government was going to respond to rebuttal. Would you? I'm not certain why the defense did what the defense did in this case, Your Honor. You have to assume that they did it because they didn't think aiding and abetting was going to come in at all. But, Your Honor, respectfully, you can't put forth a defense of, I couldn't possibly do it, and then respond to all of the other evidence that suggested you did, which is the duct tape found in the trunk of his car, the jewelry that he suggested had been stolen, now also found in the trunk of his car. If you can't reconcile those two theories, the prosecutor is entitled to respond to it, and the way the prosecutor responded to it was the exact way that the evidence supported it. Well, the state court did not find that the evidence supported it, but the prosecutor was entitled to ask for a jury insurrection at that point, saying, even if he didn't do it, he has all of these other things suggesting that he participated in it, which is worthy of an aiding and abetting insurrection. Everybody in this case has agreed that, from the state courts to the district court, the parties, we all agree that the controlling Supreme Court precedent in this case is Cole v. Arkansas. A criminal defendant has a constitutional due process right to notice of a specific charge and the opportunity to be heard in court on that charge. Here, the district court improperly extended the rule of Cole to a new context that was never envisioned by Cole, and Appelli urges this court to do the same thing. So what do you make of Gout, our case? Yes, Your Honor. Gout and Lee, both from this court, first of all, are not controlling precedents from the United States Supreme Court, and that's true, but they may bind us as circuit precedent. Right. For purposes of AEDPA, the only controlling precedent would be precedent from the United States Supreme Court. In any event, Gout and Lee are both distinguishable because both of those cases dealt with sentencing enhancements. A sentencing enhancement is akin to a charge. It has elements. It is something that the prosecutor has to plead and prove beyond a reasonable doubt to a unanimous jury, and the difference in that case, in both cases, the defendant is charged with one subdivision of a sentencing enhancement. He is sentenced to a completely different one, which he was never tried for, never defended against at trial, and at the end of the day, the difference in Gout was 25 years to life and in Lee, 10 years. So your argument in Gout is that it's akin to the indictment argument. The defendant was never on notice that he was going to be. In this case, you think he was on notice because of the indictment. Correct, Your Honor. There is that distinguishment and also the fact that the first time the new sentencing enhancement comes to play in both Gout and Lee is at the sentencing hearing. So the sentence that the defendant was on notice of at the beginning of trial was quite different than the sentence that was imposed when he walked into the sentencing hearing. Go ahead, finish. There is no charge of aiding and abetting murder in California. There is no difference in liability if you're charged as an aider and abetter or as a direct perpetrator. That's true, and I agree if the information had just said you're charged with murder. But then it goes on to say that he unlawfully and with malice aforethought killed his wife. So there's extra language in this particular indictment that doesn't track the statute. Why in this case would that put him on notice that an aiding and abetting theory could have been forwarded by the prosecution? Under California law, that is the way that murder is typically charged. California Penal Code Section 31 defines who are principals in crime and includes within that definition aiders and abetters. So the fact that it says kills is tracking the statutory language of a principal. California Penal Code Section 971 says all persons concerned in the commission of a crime who by the operation of other provisions of this code are principals therein shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any accusatory pleading against any such person than are required in an accusatory pleading against a principal. So in the ordinary case, if someone is charged with murder and the prosecution puts on evidence of aiding and abetting at trial, the defendant can't complain that he didn't receive sufficient notice. I'm sorry. The defendant can't complain that he didn't receive sufficient notice. Correct, Your Honor. Now, this case, the question is, and I don't think anybody disagrees, at least any of the courts that have this so far. The question in this case is whether something happened along the way to let Mr. Smith know that, while ordinarily you ought to be worried about an aiding and abetting charge, in this case you shouldn't. And the argument seems to be the judge's ruling, which you've talked about now. Is there anything that the prosecutor did other than not call the informant that might have led Mr. Smith into believing that aiding and abetting was not part of this case? Absolutely not, Your Honor. Did the courts below identify anything? That the prosecutor did, absolutely not. There's an argument that in the summation, I think it was he, I'm not sure, the prosecutor said essentially, that's not my theory. It's not the way, it's not, I don't think that's what happened, but what the heck, you could convict that way if you wanted to. The first time that argument was presented, Your Honor. In rebuttal. Was in rebuttal. It was in response to the defense argument, which said, I think for the first time the prosecutor is going to get up here on rebuttal and talk about aiding and abetting, which of course then the prosecutor did. The prosecutor got up and said, look, it's not my theory of the case, that's not the way I think it happened, but the judge has instructed you on it and I guess you could convict on that basis if you wanted to. More or less, Your Honor. But it was clear from the outset of this case that the prosecutor's theory was that Mr. Smith and Mr. Smith without the assistance of anyone killed his wife. So then why did the prosecutor ask for the aiding and abetting instruction? It appeared to be a fallback theory based on the defense presentation of evidence, Your Honor. But that doesn't mean that the prosecutor can't elect to present the case to the jury as a direct perpetrator theory, and juries are entitled to disagree as to the theory of murder. I know you wanted to save a little bit, but I wanted to ask you, I want to understand what the State's theory of the case. State's theory of the case that there wasn't evidence of aiding and abetting. Correct. That the trial judge erred in giving the instruction, but we ought to analyze it under Griffin. Correct, Your Honor. That's correct. And I did want to say one other thing about the district court's ruling as far as maybe changing the way or the notice that Mr. Smith had about aiding and abetting. It was clear that the trial court never prohibited the prosecution from presenting, whether it was through this informant or through any other evidence, some presentation of aiding and abetting. And that was because in the same ruling that the trial court told the parties that they could not mention the informant in opening statements, the trial court also ruled that if the prosecution did call the informant, then certain conversations between the informant and the prosecutor would be fair game for the defense on cross-examination. So by making that ruling, the trial court made very clear that it was not prohibiting anybody from calling, from presenting the informant, or the theory of aiding and abetting at trial. And I'll reserve the remainder of my time. Thank you. Thank you. Your Honor, it's Dennis Feardon for Petitioner Appellee. The government's, the state's reply brief was dedicated solely to the issue of whether there's well-established Supreme Court law on this. That's really the heart of their position today. And they're dead wrong on that for this reason. They agree that COLE is well-established Supreme Court law. They say COLE stands for nothing other than the proposition that you're entitled to a formal charge and nothing more. You're not entitled to notice of a theory. Well, after COLE was decided by the United States Supreme Court, the Supreme Court in Russell v. United States citing COLE said that an indictment in that case was defective because it allowed the prosecution freehand to fill in the gaps of proof by surmise or conjecture. It cites COLE and says, in essence, COLE stands for the proposition that you have to inform the defense of what the government's theory is. So your position is that in California, if you are indicted for murder, the state must separately inform you that it intends to pursue an aiding and abetting theory? Absolutely, Your Honor. And what do you cite for that? Well, the way that everyone would agree that California's notice system where you just say murder is not adequate constitutional notice. The law of California is that it's okay just to have notice pleading, unlike federal courts where you have to state all of the elements of the offense and so forth, because California provides discovery through preliminary hearings and so forth and so on. California Supreme Court has said you don't have to do it in the charging document as you do in the federal courts, but you have to do it along the way. So let's step forward. Do you agree that at least the preliminary hearing gave some notice that the state might be pursuing a theory of aiding and abetting? Absolutely not. A detective gets on the stand and says that an informant told him, that the defendant told him that he was involved in this, and the informant never told the defendant, never told the detective that anyone other than the defendant was involved in the crime. If you look at the statement we cited in our brief, the detective says, no, he never told me that somebody else did it. He said that he didn't give me any information as to who did it. So that under your theory of the case then, had the state tried to prove aiding and abetting at trial, let's just assume for a moment they tried to put on a witness about aiding and abetting, your argument would have been that they were prohibited from doing so because they hadn't given you previous notice? No. What the Supreme Court's actual rule is, is that you have to have, and this is Lankford, for instance, you have to have notice, this is Inouye Gault, of the specific issues to be resolved at trial sufficiently in advance so that you can prepare a defense. So what would you have done differently? Well, here's a good one. Because the defense in this case, as I understood it, I read some of the record, the defense in this case, as I understood it, was that your client said, yeah, I was there at some point during the day, but I wasn't there when the murder occurred. Exactly. So how would he have defended the case differently if he thought there was an aiding and abetting theory? Well, look, the factual, if you're the perpetrator, the defense is you weren't there and didn't do it, right? Alibi is the perfect defense, right? I wasn't there. I was somewhere else. It wasn't perfect in this case. Well, a convincing alibi defense, well, it may have been. It may have been sufficient to convince some jurors. If aiding and abetting is about relationships, so if you're going to defend. . . But the State introduced no evidence with respect to who else might have done it. No. See, I thought the defense in this case against aiding and abetting was just about perfect. The defense lawyer said in summation, they didn't put on any evidence of aiding and abetting. What would you have done differently in this case? Well, look at this. If you're on notice, we're going to say he put somebody else up to it, right? Number one, why don't you call a forensic accountant to say, I've examined all of his assets. There's no money. We can explain every dollar. There's no payment here. Why don't you put on telephone records saying, look, every call made that day is explained. There's no unexplained call to some third person. In fact, there isn't any for the week previous or the week after. Those are powerful arguments. Look at the Brady issue. Or you may call the defendant. Or you may call the defendant because you're convinced that the evidence that he wasn't there raises a reasonable doubt, but now you have to put the defendant on to say, no, I am telling you that I did not have contact. Look at my telephone records. Look at . . . How is this different? What I'm having some difficulty with is the Griffin analysis. Griffin says that if a case goes to the jury on two theories and there's no evidence to support one of them, we shouldn't reverse unless it's probable after reviewing the record that the jury convicted on the bad theory. Why isn't that precisely this case? Because the issue . . . You're right. If it's simply a matter of inadequate evidence to support a theory, we assume that the jury didn't go that way. But, one, this is a legal defect, which is that the theory is defective because it was not only presented not before trial, but during trial and was sandbagged in closing argument. And, secondly, of course, we have to deal with, you weren't there, I wasn't there, who was at the trial? The trial judge. And what did the trial judge say? Hey, you know what? The jury might convict on the aiding and abetting theory. You've presented a substantial defense. There's a reasonable chance the jurors will buy that. And so the prosecutor gets up in closing argument and says, I have tried all this trial to prove my theory, which is that he did it. But, by the way, six of you is all I need to convict, because the other six of you can go off on a theory that has never been articulated until now. See, my problem is I'm having a difficult time. Here's the classic Griffin case. You have perfect notice. Somebody says we're pursuing an aiding and abetting theory. Prosecutor gets up, says it in his opening argument, puts on no evidence of it at all. The defendant says, in summation, they didn't put on any aiding or abetting argument, evidence. The judge instructs the jury. The jury convicts. And on review, the Supreme Court says to us, gee, if there isn't any evidence to support that theory, see if you can decide whether or not he was probably convicted on that theory. That's our constitutional duty. So I'm trying to figure out why this is. But no appellate court, number one, can say there was no evidence when the trial judge said there is sufficient evidence. Well, no. Trial judges, with all respect, we have a very nice one at the end of the panel here, make mistakes from time to time. So do we. I mean, so sometimes they instruct the jury on theories not supported by the evidence. Isn't that just the standard? The second thing, Your Honor, is that the failure to articulate, give adequate notice, is the other half of Griffin. It's a legal error. It's not factual inadequacy. It's a legal error. And I should point out something that Judge Thomas said, because this is the dagger in the heart of the argument that there isn't Supreme Court well-established authority on this. The question, of course it's right. The issue is, does Cole stand for the principle that you're entitled to not only a formal charge, but notice of a specific theory in time to prepare for it? Not only does Russell say that, but this Court has said that Cole says that. That's what Judge Trott said in Shepard v. Reese. So this Court cannot say Cole doesn't require adequate notice, because as Judge Trott said, the notice that it's a perpetrator or a premeditated murder is not adequate to permit a prosecutor, then at the close of the case, to argue felony murder. And he cites Cole and Strickland. So this Court has already ruled that the United States Supreme Court authority establishes the principle that you're entitled to notice of a specific theory. And I would go on to say, Judge Hurwitz, that Shepard v. Reese says, if you're not given notice in that way, then the error is so fundamental. And the Supreme Court has said, this is the most fundamental due process guarantee. In Shepard, as I understood it, the problem was that there was evidence from which a jury could convict about felony murder, but the defendant didn't defend against it because he didn't think it was an issue in the case. Is that a fair summary of Shepard? Well, there was no notice given of it, and Judge Trott said that the theory wasn't injected into the case only at the point of the instructional conference. Right. When he got to harmless error, though, he said it can't be harmless because the jury, there was sufficient evidence. No, no, no, no. He didn't say that. Didn't he say that? What he said, Your Honor, is that when you have violated the rule against specific notice, a trial cannot be fair. He said no trial in which constitutional guarantees of due process notice have not been met can be deemed fair. Okay. So I still want to go back and understand your argument because now I understand better what you're arguing. So you're arguing that no notice was ever given. Your argument doesn't depend on the judge's rulings excluding the witness. Your argument is that no notice was ever given that there might be a aiding and abetting theory. No notice was given at the prelim or any point up until the instructional conference that the prosecutor was going to rely on. The courts below seem to rely on the ruling excluding the informant. You're not relying on that. Well, I am debunking the notion that that was notice because look at the comments. There is no aiding and abetting theory articulated in the hearsay statement by an informant who was never called to trial. Your Honor, I will even concede that you could have a situation where the alternate theory is not given notice of retrial, but it comes up during the prosecution's case and a court could say I'm going to give you a continuance. I'm going to give you a reasonable chance to prepare. So the Supreme Court rule is specific notice of issues and an adequate chance to prepare. I'm not setting out necessarily a bright line rule that says that it can't be provided along the way in a state court proceeding. But what I'm saying here is that Shepard v. Reese says the one place you can't provide it for for the first time is the instructional conference because then there's no opportunity to present evidence. And more than that, why would a prosecutor who is honest and acting in good faith ask for aiding and abetting at the instructional conference, not before, and then say I'm not even going to tell you what I'm going to say to this jury about it because then you'll have a chance to dissect my argument. I'm going to save it and sandbag you in rebuttal. I mean, that fact alone so exacerbates it. And look at the statement that he said. You know, if you're not convinced beyond a reasonable doubt of what I tried to prove, don't worry. You can still convict. How can that not be prejudicial? It's, you know, if a prosecutor were to get up in closing and say, you know, six of you is good enough to convict, it would be gross misconduct. And yet he essentially says as to his theory that's all that's required. Are you saying that the state court made an unreasonable decision in rejecting your misconduct argument? I mean, the Court of Appeal rejected the misconduct argument. I'm not here to argue the misconduct argument. I'm just saying that you, Your Honor, have raised the question of whether this case could be disposed of on a harmless error grounds. And what I'm saying is that the dilution, the exploitation of the unconstitutional aiding and abetting theory in closing argument makes it impossible to say that the lack of notice and the injection of the theory into the case wasn't prejudicial. Well, if it hadn't been mentioned at all, this would be a different case. In other words, if aiding and abetting had never entered the closing arguments and you had just the bare instruction, this might well be a different case. Well, you know, what a judge instructs on can be very important. But what the prosecutor did where he says in closing, I may have failed. All of my evidence may not have convinced the 12 of you. It doesn't make any difference. He's guilty anyway. To have that argument advanced and have it advanced where there's no chance to respond to it, it's just not a fair trial. But in fairness, the defense attorney anticipated that argument and said, well, I predict he's going to make an aiding and abetting argument, and that doesn't work. And then he gets up and he makes the aiding and abetting argument and said, Ms. Keller knew I was going to do this. Yeah, she's got a guess. She's got a guess. Well, but that always happens. That always happens even with proper arguments. The prosecutor under our system saves his best argument for rebuttal and the defendant has to anticipate it. Can you think of a case in your experience where a prosecutor did not discuss a theory on which he tells the jury he wants them to convict? I can't think of a case in my experience where a prosecutor said, and my experience isn't that universal, got up and said, you know, I think I proved the other theory. This isn't my theory of the case, but the judge has instructed you on it, so you ought to consider it. I mean, that's a pretty wishy-washy sandbag. But just consider a couple of things. Let's say there was an aiding and abetting theory, and you go to the prosecution and say, I want Brady material. Show me your investigation of the financial record. Show me the investigation of the telephone calls. And one of two things happens. You get up there and say, you know, they investigated this. They didn't find a shred of evidence for aiding and abetting. Or you get up and say, you know, they're telling you to convict a man of murder on an aiding and abetting theory. They didn't even go bother to look and see whether there was anything that's financial records or telephone records that would support the theory. Those are powerful arguments. I know your time has expired, but I do have one more question for you. Can you respond to the State's contention that, in effect, the defense injected aiding and abetting into the case? I have to. We talk about a novel theory. The United States Supreme Court has said that the prosecution has to provide notice. Specific notice, specific issues. And what the State says is that, even if they don't do that, a defendant, by presenting his defense, has to analyze his defense and see how he gave himself notice, by raising that defense, of how the prosecution would respond to that. I mean, that is just nonsense. I mean, it's just the notion that notice shifts from the State to the defendant by the very exercise of his constitutional right to present the defense. He, in essence, abdicates his right to specific notice by the State. It's nonsense. There's no support for that, certainly in any Supreme Court case.  I agree with the State that it is the Supreme Court that has to set up the well-established principles. But this Court has made a binding decision that Cole v. Arkansas requires notice of a specific theory at least early enough to allow an adequate presentation of evidence. And the rebuttal argument is the last place that, you know, to raise a theory for the first time in a case. One other question for you. Does Shepard survive? Does the Helmer's error analysis in Shepard survive Griffin? Griffin is a later case, isn't it? Oh, it absolutely does, Your Honor, because Shepard has nothing to do with the adequacy or inadequacy of the evidence of the felony murder theory. What it says is that a trial in which the specific theory is not articulated soon enough to allow the presentation of the defense is, per se, an unfair trial. Any further questions? Thank you. Just a couple of brief points, Your Honor. Just briefly as to Shepard, I wanted to note that in that case, the State conceded the issue of notice. And the State's concession was that it had affirmatively misled the defense into believing that a particular theory would not be presented during the course of the trial, which obviously is very different than the situation we have here. Gott, following Shepard, did apply the Brecht's harmless error analysis. So I would suggest that Shepard's harmless error analysis, or lack thereof, did not survive. In any event, until today, Apelli has never indicated what evidence he would have or could have presented, had he been explicitly notified of aiding and abetting as a possible theory at some point earlier in time. Well, it was in response to our question, so. Certainly, Your Honor. That's my point in some sense. And I would agree that the best response to the evidence was the very response the defense counsel gave in closing argument. Who is it? Who is the murderer? The prosecution has not told you who this person was who entered the house and killed the victim. Therefore, you, the jury, must reject the theory. If there was other evidence to combat the theory, then the defense could have requested to reopen.  There was no request to reopen. The prosecution requested the instructions during the jury instruction conference, when the defense still had an opportunity to prepare its closing argument response. That is very similar to this court's decision in Morrison v. Estelle, where, during the course of the trial, a felony murder theory developed, the prosecution asked for an instruction during the course of the jury instruction conference, and it was given.  The prosecution did not rely on the theory. It was clear from the outset of the case that the prosecution's theory was that Mr. Smith and Mr. Smith alone murdered his wife. The evidence at trial supported that theory. There is no indication that the jury relied on a theory of aiding and abetting. The rule that Apelli asks you to adopt in this case is a rule that says that not only must the prosecution divulge any theory of guilt it may have envisioned before the defense announces ready to proceed to trial, but also any theory of guilt which the prosecution may never have envisioned when the defense announces ready at the beginning of trial, where those theories just emerged during the course of it, and even if that theory is one that is suggested by the defense evidence, that's not practical. It's not possible. It is not what due process requires, and it is certainly not a rule that has been uttered by the Supreme Court. Unless there are further questions, I'll submit. Thank you both for your arguments. The case will be submitted for decision.
judges: Beistline, Thomas, Hurwitz